IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

RUBEN GUEVARA, et al.,                )
                                       )
        Plaintiffs,                    )
                                       )
v.                                     )  Civil No. 11-2339-SHL-tmp
                                       )
UMH PROPERTIES, INC.,                  )
et al.,                                )
                                       )
        Defendants.                    )

_____

REPORT AND RECOMMENDATION

_____

Before the court is the Motion to Dismiss brought by defendants UMH Properties, Inc. ("UMH"), UMH Sales and Finance, Inc. ("UMH Finance"), and Gail Whitten (collectively "Defendants"), filed September 25, 2013. (ECF No. 74.) Plaintiffs filed a response in opposition on December 5, 2013, and Defendants filed a reply on January 13, 2014. The court heard oral argument on the motion on May 1, 2014. For the reasons below, it is recommended that the Defendants' motion be granted in part and denied in part.

## I.    PROPOSED FINDINGS OF FACT

The following facts are based on the well-pleaded allegations contained in the amended complaint, which for purposes of deciding motion to dismiss, the court accepts as true. This case arises out of a major flood that hit Memphis in

May 2010.  The Plaintiffs in this action were all residents of Memphis Mobile City ("MMC"), a manufactured housing community which was owned by or was a subsidiary of Defendant UMH Properties, Inc.  On May 1, 2010, flood water rose up to nine feet within the mobile home park, necessitating coordinated rescue efforts by workers who used motor boats to evacuate residents who were stranded in high water and causing massive damage to the property of Plaintiffs and others at the mobile home park.  Almost all of the residents of the approximately 150 mobile homes in MMC were of Hispanic descent, many of whom had very limited proficiency in the English language.

The mobile home park is in a designated flood plain and has experienced serious flooding problems over the years.  There were major floods in the park in 1987 and 1995, and many less severe ones in between.  Most of the twenty-nine original Plaintiffs[1] purchased mobile homes that sat on "pads" or lots in the mobile home park from Defendant UMH Sales and Finance, a corporation which appears to be another subsidiary of UMH Properties, Inc.  The ten remaining Plaintiffs assumed the Retail Installment Contract and Security Agreements ("RISCs") of a prior owner, purchased their mobile home through a "straw man" at the coaching of Defendant Gail Whitten (who was the manager

---

[1]The original complaint was brought by twenty-nine named Plaintiffs.  The court subsequently ordered nineteen of these plaintiffs to arbitrate their claims.

of MMC and an employee or agent of UMH Properties, Inc.), or purchased a mobile home with cash.

On May 2, 2011, Plaintiffs, all of whom are of Hispanic descent, brought this putative class action seeking declaratory judgment, permanent injunctive relief, and damages for discrimination in housing on the basis of national origin. This action is brought under the Fair Housing Act of 1968 ("FHA"), as amended, 42 U.S.C. §§ 3601 et seq., and the Tennessee Human Rights Act ("THRA"), as amended, Tenn. Code Ann. § 4-21-601 et seq. Plaintiffs also bring the action for violations of the Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. § 47-18-101 et seq.; breach of the common law duty to disclose a latent defect; breach of the common law warranty of habitability; violations of the Tennessee Uniform Residential Landlord and Tenant Act ("TURLTA"), Tenn. Code Ann. § 66-28-101, et seq.; fraud in the inducement of contract; fraud in the inducement of an arbitration agreement; breach of contract; intentional misrepresentation; and conversion. Defendants moved to stay the proceedings and require the Plaintiffs to arbitrate their claims because of arbitration clauses in RISCs signed by many of the Plaintiffs. The Court ultimately required nineteen Plaintiffs to arbitrate, but allowed the case to continue as to ten remaining Plaintiffs.

Defendants now move to dismiss all claims in Plaintiffs' Amended Complaint with prejudice, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). Defendants argue that each of Plaintiffs' nine claims fails to state a claim upon which relief can be granted against any Defendant. Defendants argue that the Plaintiffs fail to adequately identify any factual averment that provides a basis for any stated claim, thus requiring the Defendants and the court to "connect the dots" between Plaintiffs' factual averments and the stated causes of action. Defendants additionally argue that even if Plaintiffs have stated a legally cognizable claim, the majority of Plaintiffs' purported claims are time-barred under the relevant statutes of limitations or repose, or both. Specifically, Defendants argue that Plaintiffs' claims for violations of the FHA, THRA, and TCPA are time-barred, and the majority of Plaintiffs' claims for intentional misrepresentation are also time-barred. Defendants next argue that Plaintiffs fail to plead their intentional misrepresentation and TCPA claims with particularity as required by Federal Rule of Civil Procedure 9(b). Finally, Defendants argue that to the extent any Plaintiff asserts claims arising under any RISC that contains an arbitration clause, that Plaintiff should be compelled to arbitrate his or her claims pursuant to the Federal Arbitration Act and the court's arbitration order.

## II. PROPOSED CONCLUSIONS OF LAW

### A. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." DirectTV, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" Williams v. Curtin, 631 F.3d 380, 383 (6th Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 681 (2009)). But the court "need not accept as true legal conclusions or unwarranted factual inferences." DirectTV, Inc., 487 F.3d at 476 (quoting Gregory v. Shelby Cnty., 220 F.3d 433, 446 (6th Cir. 2000)). "[L]egal conclusions masquerading as factual allegations will not suffice." Eidson v. State of Tenn. Dep't of Children's Servs., 510 F.3d 631, 634 (6th Cir. 2007). In any complaint averring fraud or mistake, "the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). "The Plaintiff [ ] must plead more than a generalized

grievance against a collective group of Defendants in order to meet the requirements of FRCP 9(b)." Masterson v. Meade Cnty. Fiscal Court, 489 F. Supp. 2d 740, 749 (W.D. Ky. 2007) (citing United States ex rel. Bledsoe v. Cmty. Health Sys., Inc., 342 F.3d 634, 643 (6th Cir. 2003)).

**B.    FHA & THRA Claims**

The Plaintiffs base their FHA and THRA claims on allegations that they have been specifically targeted for exploitative and discriminatory housing practices because of their national origin in a scheme carried out by Defendants in violation of 42 U.S.C. § 3604(b) and § 3604(c). Defendants argue that no Plaintiff can state a claim for violations of the FHA.

　　1.    Claims Under § 3604(b)

Both the FHA and the THRA prohibit discrimination in terms, conditions, and privileges of housing. 42 U.S.C. § 3604(b); Tenn. Code Ann. § 4-21-601(2). Recently, the Southern District of Ohio addressed what a plaintiff alleging a § 3604(b) claim must show to withstand a motion to dismiss:

> Thus, a plaintiff is not required to allege every element of the prima facie case. Rather, she may survive a Rule 12(b)(6) challenge with merely "a short and plain statement of the claim," consistent with Fed. R. Civ. P. 8(a), provided that it "gives the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." [Lindsay v. Yates, 498 F.3d 434, 439 (6th Cir. 2007) ("Lindsay I")] (quoting Swierkiewicz v. Sorema N.A., 534 U.S.

506, 512, 122 S. Ct. 992, 152 L.Ed.2d 1 (2002)).
Under Lindsay I, a plaintiff in this Circuit need
allege only (a) the statutory basis for her claims,
and (b) the factual predicate of those claims, such
that the defendants are "apprise[d] . . . of the [ ]
claims and the grounds upon which they rest." Id. at
440. Moreover, the Court of Appeals has emphasized
"the well established principle that in interpreting
the Fair Housing Act, courts are to give effect to the
'broad remedial intent of Congress embodied in the
Act.'" Fair Hous. Council, Inc. v. Vill. of Olde St.
Andrews, Inc., 210 F. App'x 469, 480 (6th Cir. 2006)
(quoting Havens Realty Corp. v. Coleman, 455 U.S. 363,
380-81, 102 S. Ct. 1114, 71 L.Ed.2d 214 (1982)).

In this case, Plaintiffs have satisfied the
threshold requirements set by Lindsay I. Plaintiffs
have set forth the statutory bases for their claims,
and described in detail the factual predicates
supporting them. The Defendants cannot say that they
have not been apprised of the claims against them and
the grounds on which they rest.

With regard to [Defendant], Plaintiffs have
described a pattern of discrimination spanning several
years. Over the two years she lived at Coopermill
Manor, Plaintiff was regularly tormented by
[Defendant], who terrorized her, threatened her and
her children, (Amended Complaint, Doc. 17, ¶¶ 18-20,
32), physically assaulted her (id., ¶ 21, 45), forced
himself into her home (id., ¶ 21), and destroyed her
property (id., ¶ 36). In response to these incidents,
and the threats against her, [Defendant] blamed and
reprimanded her after each event, (see id., ¶¶ 22, 24-
25, 34-35, 37, 39-40, 51) . . . . [Defendant] did not
investigate the accuracy of complaints against
Plaintiff, but instead created permanent electronic
records memorializing the inaccurate accusations
against Plaintiff. (Id., ¶ 28-31, 35, 38).
[Defendant] ordered Plaintiff to leave Coopermill
Manor (id., ¶¶ 40-42), and in the end attempted to
evict her (id., ¶¶ 52-56). Several years later,
[Defendant] continued its discriminatory actions by
sending multiple negative reference letters to other
landlords, ensuring that Plaintiffs would be unable to
obtain adequate new housing. (Id., ¶¶ 90-100, 111,

116-117). . . . These allegations state a claim under
Lindsay I.

Dickinson v. Zanesville Metro. Hous. Auth., 975 F. Supp. 2d 863,
870-72 (S.D. Ohio 2013). Similarly here, the Plaintiffs have
set forth the statutory bases for their claims and outlined the
factual details supporting the allegations of Defendants'
misconduct. As the Plaintiffs describe in their response to
Defendants' motion to dismiss, Plaintiffs have alleged that
Defendants violated the FHA (specifically, § 3604(b)) in at
least the following ways: failing to register mobile homes in
the names of buyers in spite of the fact that they were charged
fees for titling, leaving them with no badge of ownership but
all the responsibilities attendant thereto (Am. Compl. ¶¶ 338-
55); improperly requiring residents to pay all of the property
taxes associated with lots (even taxes that accrued prior to
their residency), rather than only the increased taxes for
affixing "their" mobile home to the land (Am. Compl. ¶¶ 129-34;
157-61); shifting all the burden for maintaining and insuring
the mobile homes to the resident, even though their "ownership"
rights were very tenuous in many instances because they had no
formal badge of ownership of the mobile homes (Am. Compl. ¶¶
266, 316, 405); frequently and arbitrarily raising the rent on
the pads on which the mobile homes sat (Am. Compl. ¶¶ 204-06,
230); creating "ridiculous contrivances" to prevent Guevara from

moving his mobile home (Am. Compl. ¶¶ 154-69); cursing Guevara in front of his family (Am. Compl. ¶¶ 171-72); calling police on Martinez and other Hispanic residents when they went peacefully to the mobile home park office after the flood and threatening to call immigration authorities (Am. Compl. ¶ 211); threatening Nava with criminal prosecution and deportation, and calling the police on him in retaliation for his attempts to move his mobile home (Am. Compl. ¶¶ 251-52); threatening unwarranted criminal action against Nevarez (Am. Compl. ¶ 300); and cursing Angeles in front of his wife and children and threatening criminal action and deportation against him (Am. Compl. ¶¶ 362-63). Those allegations, among others, are sufficient to state a claim under the FHA.

Defendants argue that Plaintiffs' allegations do not rise to the level of an FHA violation. Defendants argue in their motion to dismiss, "First, the Fair Housing Act does not provide a remedy for trifles like line-cutting, cursing, and overly aggressive policing of yard decorum." (ECF No. 74-1 at 11.) Defendants are correct that the FHA does not "convert every quarrel among neighbors in which a racial or religious slur is hurled into a federal case." Halprin v. Prairie Single Family Homes of Dearborn Park Ass'n, 388 F.3d 327, 330 (7th Cir. 2004). The court finds the incidents alleged in the amended complaint to be much more serious than a neighborly quarrel.

Defendants next argue that the FHA does not apply to conduct occurring after a party has access to housing. Defendants acknowledge, however, that there is a split of authority on this issue and that the Sixth Circuit Court of Appeals has not yet addressed this issue. <u>Compare</u> <u>Cox v. City of Dallas, Tex.</u>, 430 F.3d 734 (5th Cir. 2005) (finding that FHA prohibited discrimination relating to the initial sale or rental of a dwelling), <u>with</u> <u>Comm. Concerning Cmty. Improvement v. City of Modesto</u>, 583 F.3d 690 (9th Cir. 2009) (finding that FHA reaches post-acquisition discrimination). The court need not decide the issue at this time, as several of Plaintiffs' allegations involve conduct on the part of Defendants that occurred prior to Plaintiffs inhabiting MMC – for example, that Defendants charged Plaintiffs titling fees even though Defendants failed to register mobile homes in Plaintiffs' names, that Defendants improperly required residents to pay all property taxes associated with lots even if those taxes accrued prior to residency, and that Defendants locked Plaintiffs into unfairly long lease agreements.

2. <u>Claims Under § 3604(c)</u>

Plaintiffs also allege that they have been deprived of the benefits of a racially and culturally diverse environment because of the discriminatory exclusion of African-Americans from the MMC mobile home park in violation of 42 U.S.C. § 3604(c) and Tenn. Code

Ann. § 4-21-601(5).  The FHA provides that "it shall be unlawful
. . . to make, print, or publish . . . any notice, statement, or
advertisement, with respect to the . . . rental of a dwelling
that indicates any preference, limitation, or discrimination
based on race, color, religion, sex, handicap, familial status,
or national origin . . . ."  42 U.S.C. § 3604(c).  A § 3604(c)
claim has three elements.  "A plaintiff must prove that: (1)
defendant made a statement; (2) the statement was made with
respect to the sale or rental of a dwelling; and (3) the
statement indicated a preference, or limitation or
discrimination on the basis of a protected class."  Miami Valley
Fair Hous. Ctr., Inc. v. Connor Grp., 805 F. Supp. 2d 396, 407
(S.D. Ohio 2011) (citing White v. U.S. Dep't of Hous. & Urban
Dev., 475 F.3d 898, 904 (7th Cir. 2007)).  "A plaintiff may
establish a violation of § 3604(c) either by proving an actual
intent to discriminate, or by proving that an advertisement
indicates to an 'ordinary reader' that a particular class of
persons is preferred or disfavored."  Id. (citing Hous.
Opportunities Made Equal, Inc. v. Cincinnati Enquirer, Inc., 943
F.2d 644, 646 (6th Cir. 1991); Jancik v. Dep't of Hous. & Urban
Dev., 44 F.3d 553, 556 (7th Cir. 1995)).  The "sole requirement
for standing to sue" under the 3604(c) is the Article III
"minima of injury in fact . . . ."  Havens Realty Corp. v.
Coleman, 455 U.S. 363, 372 (1982).  The alleged denial of a

racially diverse community is a sufficient injury to state a claim under the FHA. <u>Trafficante v. Metro. Life Ins. Co.</u>, 409 U.S. 205, 209-10 (1972) ("What the proof may be is one thing; the alleged injury to existing tenants by exclusion of minority persons from the apartment complex is the loss of important benefits from interracial association."); <u>Hamad v. Woodcrest Condo. Ass'n</u>, 328 F.3d 224, 231 (6th Cir. 2003) (citing <u>Trafficante</u>). Further, any individual alleging an injury due to a violation of the FHA has standing to sue, even if he or she was not the target of the discrimination. <u>See, e.g.</u>, <u>United States v. Hylton</u>, 944 F. Supp. 2d 176, 190 (D. Conn. 2013) (quoting <u>Wentworth v. Hedson</u>, 493 F. Supp. 2d 559 (E.D.N.Y. 2007)) ("It has long been held that whites have standing to sue under section 3604(c) for discriminatory statements made against non-whites.").

Defendants argue that Plaintiffs § 3604(c) claim is too speculative to plausibly state a claim for relief. Plaintiffs have alleged, however, that the Defendants advertised extensively in Spanish-language print and radio media in an effort to target Hispanics for exploitative treatment in terms and conditions of housing at MMC (Am. Compl. ¶¶ 34-36); that as a result of the purposeful targeting, virtually all of the residents of MMC were Hispanic (Am. Compl. ¶¶ 34-36); that Defendants actively discouraged African-Americans from applying for residence at MMC

(Am. Compl. ¶ 39); and that the majority of residents of Shelby County are African-American, yet there are virtually no African-American residents at MMC and that "it is highly unlikely, if not impossible, that this situation could exist without discriminatory manipulation of the resident selection process" (Am. Compl. ¶¶ 37-39). Those allegations are not purely speculative and therefore, plausibly state a claim for relief under § 3604(c).

For the above reasons, it is recommended that the Defendants' motion to dismiss Plaintiffs' FHA and THRA claims be denied.[2]

---

[2]Defendants argue that Plaintiffs are unable to state a claim for reverse redlining under the FHA. Reverse redlining claims can be brought under the FHA, 42 U.S.C. § 3605. That provision reads, "It shall be unlawful for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin." 42 U.S.C. § 3605(a). A "real estate-related transaction" is defined as "the making or purchasing of loans or providing other financial assistance" and "the selling, brokering, or appraising of residential real property." Id. § 3605(b). "To establish a prima facie case of discrimination in violation of § 3605 based on reverse redlining, the plaintiff must show: (1) that she is a member of a protected class; (2) that she applied for and was qualified for loans; (3) that the loans were given on grossly unfavorable terms; and (4) that the lender continues to provide loans to other applicants with similar qualifications, but on significantly more favorable terms. In the alternative, if the plaintiff presents direct evidence that the lender intentionally targeted her for unfair loans on the basis of [protected class], the plaintiff need not also show that the lender makes loans on more favorable terms to others." Matthews v. New Century Mortg. Corp., 185 F. Supp. 2d 874, 886 (S.D. Ohio 2002) (citing Hargraves v. Capital City Mortg. Corp., 140 F. Supp. 2d 7, 20 (D.D.C. 2000)). Of the ten plaintiffs, only two – Nevarez and

## C.    TCPA Claims

Plaintiffs next assert that the Defendants violated the TCPA in the following ways: "failing to inform applicants for residency that the MMC mobile home park was subject to flooding; failing to inform applicants for housing that execution of a RISC or Assumption would lock the applicant into a long-term lease for the duration of the financing and that they would not be able to move their mobile homes away from flooding; executing assumption documents and failing to transfer title to a mobile home to the purchaser; creating contrivances to prevent residents from moving mobile homes when they were legally entitled to do so; requiring new purchasers to pay property taxes that had accrued prior to their arrival; trying to collect rental payments when the property was uninhabitable; and falsely representing that measures would be taken to remedy flooding, among others . . . ." (Am. Compl. ¶ 490.) Defendants argue that the Plaintiffs' TCPA claims are time-barred, that the Plaintiffs have failed to plead any TCPA claim with particularity, and that the Plaintiffs have not alleged an

---

Vallejo – have alleged that they received any type of financing from Defendants, and even with respect to these two plaintiffs, they merely allege that they acquired the financing indirectly through the use of "straw men." (Am. Compl. ¶¶ 259-63; 448-49; Pls.' Resp., 10-11.) The amended complaint does not appear to seek recovery under a reverse redlining theory. Therefore, it is recommended that Defendants' motion to dismiss Plaintiffs' reverse redlining claims be granted.

ascertainable loss of money or property resulting from any non-time-barred claims.

"In order to recover under the TCPA, the plaintiff must prove '(1) that the defendant engaged in an unfair or deceptive act or practice declared unlawful by the TCPA and (2) that the defendant's conduct caused an 'ascertainable loss of money or property, real, personal, or mixed, or any other article or commodity, or thing of value wherever situated . . . .'" Roopchan v. ADT Sec. Sys., Inc., 781 F. Supp. 2d 636, 656 (E.D. Tenn. 2011) (quoting Tucker v. Sierra Builders, 180 S.W.3d 109, 115 (Tenn. 2005)). An act is "deceptive" if it involves a "material representation, practice or omission likely to mislead a reasonable consumer." Davis v. McGuigan, 325 S.W.3d 149, 162 (Tenn. 2010) (quoting Ganzevoort v. Russell, 949 S.W.2d 293, 299 (Tenn. 1997)). In contrast, an act is "unfair" if it "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition." Davis, 325 S.W.3d at 162 (quoting Tucker, 180 S.W.3d at 116–17).

Here, Plaintiffs have adequately alleged a claim under the TCPA. For example, with regard to the allegation that Defendants violated the TCPA by trying to collect rental payments when the property was uninhabitable, Plaintiffs identify in their response to Defendants' motion to dismiss

where factual support for those allegations can be found in their complaint:

> With respect to collection of rents after the properties had become uninhabitable because of the flood, it was clearly alleged that Plaintiff Ruben [Guevara] was forced to pay rent for the months in question in order to be able to move one of his two trailers. (Amended Complaint ¶¶ 149-156). Likewise, he lost possessions and the second mobile home he purchased because apparently because [sic] he did not pay pad rent for the months in question and the Defendants took an eviction judgment against him. Similarly, Plaintiff Jose Nava was required to pay rent for May and June of 2010 before he was allowed to move his trailer. (Amended Complaint ¶¶ 247-253). Plaintiff Rodrigo Nevarez also had to pay rent for months his residence was uninhabitable in order to move his trailer. (Amended Complaint ¶¶ 297-303). Plaintiff Elida Aldaz was refused permission to move her trailer while the flood waters were rising even though she and her husband owned it outright and consequently lost all their worldly possessions as a result and were forced to sell their damaged trailer for the amount of rent demanded for May and June of 2010. (Amended Complaint ¶¶ 321-337). Plaintiff Ivan Angeles lost most of his worldly possessions because he could not get insurance because Ms. Whitten had not transferred title to him just days before the flood and was required to pay pad rent for May and June of 2010 in order to move his trailer. (Amended Complaint ¶¶ 339-364).

(ECF No. 81 at 23-24.) In their Amended Complaint, Plaintiffs have specifically stated which alleged acts of Defendants violated the TCPA, and the extensive factual allegations contained in the complaint suggest a plausible claim for relief.

Regarding the Defendants' statute of limitations argument, Tennessee Code Annotated section 47-18-110 provides that a private action for injury from an unfair or deceptive act or practice "shall be brought within one (1) year from a person's

discovery of the unlawful act or practice . . . ."  In essence, the Tennessee legislature has determined that a plaintiff's TCPA claim can only accrue at the time of discovery of the unfair or deceptive act or practice — that is, when the plaintiff discovered or reasonably should have discovered the unfair or deceptive act or practice.  <u>Schmank v. Sonic Auto., Inc.</u>, No. E2007-01857-COA-R3-CV, 2008 WL 2078076, at *2-3 (Tenn. Ct. App. May 16, 2008).  Generally speaking, in applying the discovery rule, the issue of "[w]hether the plaintiff exercised reasonable care and diligence in discovering the injury or wrong is usually a question of fact."  <u>Wyatt v. A-Best Co.</u>, 910 S.W.2d 851, 854 (Tenn. 1995); <u>McIntosh v. Blanton</u>, 164 S.W.3d 584, 586 (Tenn. Ct. App. 2004).  As the court cannot determine whether the statute of limitations has expired on Plaintiffs' TCPA claim without further factual development, it is recommended that Defendants' motion to dismiss the TCPA claims be denied.[3]

---

[3] To the extent any plaintiff seeks to bring a TCPA claim based on fraud, he or she "must plead with particularity the circumstances of the unfair or deceptive conduct, as required by Federal Rule of Civil Procedure 9(b).  <u>Malone v. U.S. Bank Nat'l Ass'n</u>, No. 12-3019-STA, 2013 WL 392487, at *5 n.26 (W.D. Tenn. Jan. 30, 2013) (citing <u>Metro. Prop. & Cas. Ins. Co. v. Bell</u>, No. 04-5965, 2005 WL 1993446, at * 5 (6th Cir. Aug. 17, 2005); <u>Harvey v. FordMotor Credit Co.</u>, 8 S.W.3d 273, 276 (Tenn. Ct. App. 1999)).  As discussed in Section I below, only Guevara has alleged fraud with sufficient particularity.  Therefore, to the extent any other plaintiff seeks to bring a fraud claim under the TCPA, it is recommended that the motion to dismiss be granted as to those claims.

**D.    Breach of the Common Law Duty to Disclose Latent Defects Claim**

Plaintiffs allege that the Defendants breached the common law duty to disclose latent defects based on the Defendants' failure to disclose that its mobile home park was in a flood zone and had a tendency to flood.  Defendants argue that no Defendant had a duty to disclose that MMC was located in a flood zone, and if any Defendant had such a duty, it nevertheless met that duty.

In a transaction involving the sale of real property, the seller has a duty to disclose to the buyer material facts that affect the property's value and that are not known or reasonably discoverable by a purchaser exercising ordinary diligence.  Fayne v. Vincent, 301 S.W.3d 162, 177 (Tenn. 2009) (citing Simmons v. Evans, 185 Tenn. 282, 285–86, 206 S.W.2d 295, 296 (1947); Patel v. Bayliff, 121 S.W.3d 347, 352–53 (Tenn. Ct. App. 2003)).  As a general matter, a party may be found liable for damages caused by his or her failure to disclose material facts to the same extent that the party may be held liable for damages caused by fraudulent or negligent misrepresentations.  Macon Cnty. Livestock Mkt., Inc. v. Ky. State Bank, 724 S.W.2d 343, 349 (Tenn. Ct. App. 1986).  Similarly, a landlord has a duty to disclose a "dangerous condition" (which is functionally the same as a latent defect) if: 1) the condition existed at the time a

tenant executed a lease, 2) the landlord knew or should have known of the condition; and 3) the tenant did not know of the condition and could not have discovered the latent defect through the exercise of reasonable care. Lethcoe v. Holden, 31 S.W.3d 254, 256 (Tenn. Ct. App. 2000).

The court disagrees with Defendants' contention that a property's susceptibility to flooding is not a latent defect as a matter of law. MMC's location in a floodplain is a material fact that affects the property's value. Whether that fact was known or was reasonably discoverable by Plaintiffs exercising ordinary diligence cannot be determined at this time without further factual development. See McCormick v. Warren Cnty. Bd. of Educ., No. M2011-02261-COA-R3-CV, 2013 WL 167764, at *7 (Tenn. Ct. App. Jan. 15, 2013) (finding that constructive notice of latent defective conditions is a question of fact); see also United States v. Lembke Const. Co., Inc., 786 F.2d 1386, 1387-88 (9th Cir. 1986) ("[A] determination of latency is treated as factual."); Kaminar Constr. Corp. v. United States, 488 F.2d 980, 985 (Cl. Ct. 1973) (the determination of whether something constitutes a latent defect is a factual determination); Burton-Dixie Corp. v. Timothy McCarthy Constr. Co., 436 F.2d 405, 411 (5th Cir. 1971) (the case of a defective condition is a question of fact). But see Fiat Motors of N. Am., Inc. v. Mayor and Council of City of Wilmington, No. 82-691 CMW, 1987 WL 12265, at

*5 (D. Del. Aug. 20, 1987) (stating in dicta that the court did not believe a flood condition could be a latent defect). Therefore, it is recommended that Defendants' motion to dismiss this claim be denied.

**E.    Breach of the Common Law Warranty of Habitability Claims**

Plaintiffs allege that by selling mobile homes that must remain at MMC for fifteen-year lease periods on lots that have a propensity to flood, causing extensive property damage and threats to the health and safety of residents, the Defendants have breached the common law warranty of habitability. Defendants make six arguments to support their motion to dismiss this claim:  1) this claim relates exclusively to non-parties to this case – specifically those parties who must arbitrate their disputes; 2) no Plaintiff alleges that he or she purchased a new home from any Defendant, and therefore, no Defendant has any duty under the common law warranty of habitability; 3) no Plaintiff alleges that any home contained a major structural defect; 4) no Plaintiff alleges that any Defendant built any of the manufactured homes; 5) as with their other claims, Plaintiffs have failed to provide sufficient allegations to recover for this claim; and 6) Plaintiffs seek recovery from Defendants who were not parties to any relevant sale.

Generally, a warranty of habitability applies in cases "where, at the time the contract is entered into, a dwelling is

to be constructed by the builder-vendor." Cloud Nine, LLC v. Whaley, 650 F. Supp. 2d 789, 795-96 (E.D. Tenn. 2009) (quoting Dixon v. Mountain City Constr. Co., 632 S.W.2d 538, 542 (Tenn. 1982)). Under the implied warranty of habitability, a dwelling is warranted to be "sufficiently free from major structural defects" and "constructed in a workmanlike manner, so as to meet the standard of workmanlike quality then prevailing at the time and place of construction." Id. (quoting Hartley v. Ballou, 209 S.E.2d 776, 783 (1974)). When analyzing implied warranty claims, Tennessee courts have "limited the application of the warranty to the original vendee." Meyer v. Bryson, 891 S.W.2d 223, 226 (Tenn. Ct. App. 1994); see also Patterson v. Jim Walters Homes, 1985 WL 4821, at *2 (Tenn. Ct. App. Dec. 31, 1985) (holding that an implied warranty "protects only the original contracting parties"). Here, the implied warranty of habitability is not applicable as no Plaintiff alleges that he or she purchased a new home from any Defendant, no Plaintiff alleges that any home contained a major structural defect, and no Plaintiff alleges that any Defendant built any of the manufactured homes. As a result, it is recommended that Plaintiffs' common law warranty of habitability claims be dismissed.

**F.  TURLTA Claims**

Plaintiffs also allege that Defendants breached warranties of habitability under the Tennessee Uniform Residential Landlord Tenant Act ("TURLTA") when "Defendants failed to keep the common areas in a safe and habitable condition by failing to warn the Plaintiffs of the possibility of dangerous flooding and then insisting that the Plaintiffs continue to pay rent after the floods when the mobile homes were clearly uninhabitable." Defendants argue that Plaintiffs cannot state a claim under TURLTA because Defendants did not qualify as "landlords" under the plain language of the Act, as Defendants only leased pads upon which manufactured homes sat.

TURLTA requires that a landlord make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition.  Tenn. Code Ann. § 66-28-304(a)(2).  Further, the landlord must keep all common areas of the premises in a clean and safe condition.  Tenn. Code Ann. § 66-28-304(a)(3).  The court disagrees with Defendants' argument that TURLTA cannot apply to Defendants because they do not qualify as "landlords."  First, as Plaintiffs point out in their response to the Defendants' motion to dismiss, the written lease that existed between Defendants and at least some of the Plaintiffs expressly identifies MMC as the "landlord" and the signing plaintiffs as "tenants."  (ECF No. 74, Ex. 2, 3.)  Additionally, at least one

Tennessee court has applied TURLTA to the lease of a lot in a mobile home park.  See R&E Props. v. Jones, No. 03A01-9804-CV-00133, 1999 WL 38282 (Tenn. Ct. App. Jan. 13, 1999).  Therefore, it is recommended that Defendants' motion to dismiss Plaintiffs' TURLTA claims be denied.

## G.    Breach of Contract Claims

Plaintiffs allege that Defendants breached several contracts that existed between Plaintiffs and Defendants.  As alleged by Plaintiffs, Defendants breached written retail installment contracts, written pad lease agreements, oral retail installment contracts, oral lease agreements, oral contracts for the service of transferring title of mobile home ownership, and contracts for the Defendants to act as a fiduciary with regard to receipt, payment, and proper application of Plaintiffs' money submitted for specific tax purposes.  Plaintiffs allege that Defendants breached these written and oral contracts by failing to furnish a lot that was safe and free from frequent flooding; by raising lot rents within lease periods; by collecting property taxes that were not owed by residents; by illegally interfering with resident mobile home owners who attempted to move them; and by entering mobile homes without permission or justification.

Defendants make several arguments in support of their motion to dismiss Plaintiffs' breach of contract claims.  First,

Defendants argue that UMH Finance and Whitten were not parties to any contracts with Plaintiffs, and therefore are improper parties against whom to bring breach of contract claims. Defendants also argue that Plaintiffs have failed to sufficiently allege the existence of contracts and contractual duties on the part of Defendants.

"It is well established in Tennessee, that a contract can be expressed, implied, written or oral, but an enforceable contract 'must result from a meeting of the minds in mutual assent to terms, must be based upon sufficient consideration, must be free from fraud or undue influence, not against public policy and must be sufficiently definite to be enforced.'" Wiggins v. Kimberly-Clark Corp., No. 3:12-CV-115, 2012 WL 4863158, at *4 (E.D. Tenn. Oct. 12, 2012) (quoting Klosterman Dev. Corp. v. Outlaw Aircraft Sales, Inc., 102 S.W.3d 631, 635 (Tenn. Ct. App. 2002)). To establish a claim for breach of contract, a plaintiff must show: (1) the existence of an enforceable contract; (2) non-performance amounting to a breach of that contract; and (3) damages caused by the breach. C&W Asset Acquisition, LLC v. Oggs, 230 S.W.3d 671, 676–77 (Tenn. Ct. App. 2007) (citing ARC LifeMed, Inc. v. AMC—Tenn., Inc., 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005)); Thompson v. Am. Gen. Life & Accident Ins. Co., 404 F. Supp. 2d 1023, 1028 (M.D. Tenn. 2005).

Plaintiffs have adequately pleaded the required elements of a breach of contract claim. For example, Plaintiffs allege that each and every Plaintiff had a lease to rent the pad in MMC upon which their mobile homes were situated, either through a written lease (Am. Complaint ¶¶ 128, 202, 264, 312-13, 345, 372, 427, 450) or an oral lease (Am. Complaint ¶¶ 231, 402). Plaintiffs allege that arbitrary rent increases breached those leases as to eight plaintiffs – Martinez, Nava, Nevarez, Aldaz, Espino, Ramirez, Rodriguez, and Vallejo. (Am. Complaint ¶¶ 206, 230, 264, 313, 373, 403, 429, 455). Plaintiffs additionally allege that in breach of the lease agreement, Guevara was forced to pay rent after the flood without a set off or abatement. (Am. Compl. ¶¶ 150-51.) Whether those and other allegations are true - whether contracts actually existed, whether there was a breach, and whether the Plaintiffs suffered damages - are questions of fact that the court cannot determine at this stage of the litigation. As a result, it is recommended that the Defendants' motion to dismiss breach of contract claims be denied.

## H. Conversion Claims

Plaintiffs allege that Defendants converted for their own benefit monies plaintiff Guevara paid to Defendants specifically for the purpose of paying taxes owed at the time of purchase of his mobile home, and that at times Defendants took Plaintiffs' personal property in "defiance" of their rights. Defendants

argue that Plaintiffs have failed to state a claim for conversion as to the collection of taxes or have waived any such claim. Defendants also argue that Plaintiffs stated no claim as to Guevara's personal property because Plaintiffs failed to allege that any Defendant gained "dominion over his personal property in defiance of his rights."

Conversion is the appropriation of tangible property to a party's own use in exclusion or defiance of the owner's rights. Barger v. Webb, 391 S.W.2d 664, 665 (Tenn. 1965); Lance Prods., Inc. v. Commerce Union Bank, 764 S.W.2d 207, 211 (Tenn. Ct. App. 1988). A conversion claim under Tennessee law can include conversion of money. PNC Multifamily Capital Inst. Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp., 387 S.W.3d 525, 553-56 (Tenn. Ct. App. 2012). Plaintiffs have adequately pleaded a cause of action for conversion against Defendants. Plaintiffs allege generally that Defendants committed conversion "by collecting payments for taxes not owed by all Plaintiffs and other residents." (Am. Compl. 500.) Specifically, Plaintiffs allege that Guevara, Martinez, Nava, Nevarez, Aldaz, Angeles, Ramirez, Rodriguez, and Vallejo paid hundreds of dollars in property taxes on their mobile homes even though they had no legal ownership. (Am. Compl. ¶¶ 132-34, 207, 232, 287, 316, 342, 402, 434, 457-59.) Plaintiffs have also sufficiently alleged various other instances of conversion, including that

Guevara's mobile home was entered and his personal possessions were taken by Defendants (Am. Compl. ¶¶ 182-192); that after the flood, Defendants took Martinez's mobile home off MMC property with no notice or compensation (Am. Compl. ¶ 226); and that MMC workers loaded and took away a washing machine that belonged to Nava (Am. Compl. ¶ 238). As a result, it is recommended that Defendants' motion to dismiss the conversion claim be denied.

## I. Intentional Misrepresentation Claims

As to the Plaintiffs' final claim of intentional misrepresentation, the Plaintiffs allege that Whitten falsely stated to Plaintiffs that there had been no flooding problems at MMC, and that as a result, Plaintiffs purchased mobile homes and suffered damages based on this false information. Defendants argue, however, that Plaintiffs had actual or constructive notice of the propensity for floods at MMC and therefore cannot state an intentional misrepresentation claim. The Defendants also argue that the intentional misrepresentation claims of Plaintiffs are time-barred.

To set out a claim for fraudulent or intentional misrepresentation, a plaintiff must show that: 1) the defendant made a representation of an existing or past fact; 2) the representation was false when made; 3) the representation was in regard to a material fact; 4) the false representation was made either knowingly or without belief in its truth or recklessly;

5) plaintiff reasonably relied on the misrepresented fact; and 6) plaintiff suffered damage as a result of the misrepresentation. Soles4Souls, Inc. v. Donelson Cedarstone Assocs., LP, No. M2009-01906-COA-R3-CV, 2010 WL 5289959, at *10-11 (Tenn. Ct. App. Dec. 17, 2010). "Because a claim for intentional misrepresentation is 'analyzed as a claim for fraud,' it must be pleaded with particularity, which requires a plaintiff to allege 'the time, place and content of the misrepresentations; the defendant's fraudulent intent; the fraudulent scheme; and the injury resulting from the fraud.'" Riddle v. Lowe's Home Ctrs., Inc., 802 F. Supp. 2d 900, 907 (M.D. Tenn. 2011) (quoting Power & Tel. Supply Co. v. SunTrust Banks, 447 F.3d 923, 931 (6th Cir. 2006)). Claims for intentional misrepresentation must be made within three years of the accrual of the cause of action. Berry v. Mortg. Elec. Registration Sys., No. W2013-00474-COA-R3CV, 2013 WL 5634472, at *6 (Tenn. Ct. App. Oct. 15, 2013) (citing Tenn. Code Ann. § 28-3-105; Russell v. Household Mortg. Servs., No. M2008-01703-COA-R3-CV, 2012 WL 2054388, at *5 (Tenn. Ct. App. June 7, 2012)).

Guevara is the only plaintiff who has sufficiently stated a claim of intentional misrepresentation. Plaintiffs highlighted their intentional misrepresentation allegations as to Guevara in their response to Defendants' motion to dismiss:

> Specifically, the Plaintiffs have alleged that Ruben
> Guevara had heard that there had been floods at MMC and
> asked Ms. Whitten in April of 2010 whether it flooded at
> MMC. [(Am. Compl. ¶ 139.)] According to the Complaint,
> Mr. Guevara had become aware of a vacant trailer at 3821
> Rocket in MMC was for sale. (Amended Complaint ¶¶ 136.)
> He wanted to buy a trailer for his parents in order to
> move them to Memphis. (Amended Complaint ¶ 137). Ms.
> Whitten told Mr. Guevara that two other trailer parks in
> the area had a flooding problem, but not MMC. [(Am.
> Compl. ¶ 140.)] In reliance on the specific assurances
> from Ms. Whitten, Mr. Guevara agreed to purchase a mobile
> home from the Defendants for a cash price of $6,000 on or
> about April 15, 2010, just two weeks before the severe
> flood damage, and began immediately investing significant
> time and money in fixing up the trailer. (Complaint ¶¶
> 141-142.) He invested approximately $500 on materials to
> repair the trailer. (Complaint ¶ 143.) The trailer, like
> most others at MMC, was severely damaged by the May 1,
> 2010 flood. Ultimately, Mr. Guevara lost the trailer and
> his substantial investment in it.

(ECF No. 81 at 49.) Those allegations are sufficient to satisfy Rule 9(b) and state a claim of intentional misrepresentation as to Guevara.

As the court discussed above in its analysis of the statute of limitations for the TCPA, Defendants' argument that this claim should be dismissed because the statute of limitations has expired fails because it is unclear when Guevara discovered or reasonably should have discovered the misrepresentation. Further factual development is necessary to determine when the statute of limitations began to run on Guevara's intentional misrepresentation claim. See Berry, 2013 WL 5634472, at *6 (concluding that trial court had erred by dismissing intentional misrepresentation claims on statute of limitations grounds when

it was plausible that plaintiff was unable to discover intentional misrepresentation until later). Therefore, it is recommended that Defendants' motion to dismiss intentional representation claims of all plaintiffs except Guevara be granted.

### III. RECOMMENDATION

For the above reasons, it is recommended that Defendants' motion be granted in part and denied in part.

s/ Tu M. Pham
_____
TU M. PHAM
United States Magistrate Judge

August 21, 2014
_____
Date

### NOTICE

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2). FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**