# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| RUBEN GUEVARA, et al., | ) |
| Plaintiffs, | ) ) |
| v. | ) ) No. 2:11-cv-2339-SHL-tmp |
| UMH PROPERTIES, INC., et al., | ) ) |
| Defendants. | ) ) |

## ORDER ADOPTING IN PART AND REJECTING IN PART THE RECOMMENDATION; ADOPTING THE REPORT; GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

Before the Court is the Magistrate Judge's Report and Recommendation on Defendants' Motion to Dismiss (the "Report and Recommendation"), filed on August 21, 2014. (ECF No. 95.) In the Report and Recommendation, the Magistrate Judge recommended that Defendant's Motion to Dismiss be granted as to Plaintiff's claims under the common law warranty of habitability, intentional misrepresentation (except Plaintiff Guevara's claim,) and the Tennessee Consumer Protection Act (except Plaintiff Guevara's claim). The Magistrate Judge recommended that Defendant's Motion to Dismiss be denied as to all other claims.

Defendants filed objections to the Report and Recommendation on September 4, 2014. (ECF No. 96.) Plaintiffs filed a response to Defendants' objections on September 29, 2014.[1] (ECF No. 98.)

For the reasons stated below, the Court ADOPTS the factual findings in the Report and ADOPTS IN PART and REJECTS IN PART the conclusions of law. Accordingly, Defendant's

---

[1] This response was not filed within the deadlines, however, the late filing was not opposed and did not impede the administration of the case or prejudice either party, therefore Plaintiffs' Motion for Extension of Time to File Response (ECF No. 97) is GRANTED and the Court accepts the response filed on September 29, 2014 (ECF No. 98) as Plaintiff's objections.

Motion to Dismiss (ECF No. 74) is hereby GRANTED as to Counts V, VI, and VII, and IX (except as to Plaintiff Guevara) and DENIED as to Counts I, II, III, IV, VIII, and IX (as to Plaintiff Guevara only).

***BACKGROUND***

For the purposes of Defendants' Motion to Dismiss, the Court adopts the Magistrate Judge's proposed findings of fact as laid out in the Report and Recommendation, to which neither party objected.

The Plaintiffs in this action are all residents of Memphis Mobile City ("MMC"), a manufactured housing community that was either owned by or a subsidiary of Defendant UMH Properties, Inc. Plaintiffs are of Hispanic descent, as were almost all of the residents in MMC. Many of these residents have limited English proficiency. Defendants are the owners and managers of MMC. The Plaintiffs did not purchase their mobile homes directly from Defendants, but assumed the Retail Installment Contract and Security Agreements ("RISCs") of a prior owner, either financing their mobile home through a "straw man" at the coaching of Defendant Gail Whitten (who was the manager of MMC and an employee or agent of UMH Properties, Inc.), or purchasing a mobile home with cash.

On May 1, 2010, a major flood hit Memphis and flood water rose up to nine feet within the mobile home park, necessitating coordinated rescue efforts by workers who used motor boats to evacuate residents who were stranded in high water and causing massive damage to the property of Plaintiffs and others at the mobile home park. The mobile home park is in a designated flood plain and has experienced serious flooding problems over the years. There were major floods in the park in 1987 and 1995, and many less severe ones in between.

On May 2, 2011, Plaintiffs brought this putative class action seeking declaratory judgment, permanent injunctive relief, and damages for discrimination in housing on the basis of national origin. This action is brought under the Fair Housing Act of 1968 ("FHA"), as amended, 42 U.S.C. §§ 3601 et seq., and the Tennessee Human Rights Act ("THRA"), as amended, Tenn. Code Ann. § 4-21-601 et seq. Plaintiffs also bring the action for violations of the Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. § 47-18-101 et seq.; breach of the common law duty to disclose a latent defect; breach of the common law warranty of habitability; violations of the Tennessee Uniform Residential Landlord and Tenant Act ("TURLTA"), Tenn. Code Ann. § 66-28-101, et seq.; fraud in the inducement of contract; fraud in the inducement of an arbitration agreement; breach of contract; intentional misrepresentation; and conversion. Defendants moved to stay the proceedings and require the Plaintiffs to arbitrate their claims because of arbitration clauses in the RISCs signed by many of the Plaintiffs. The Court required nineteen Plaintiffs to arbitrate, but allowed the case to continue as to ten remaining Plaintiffs.

On September 25, 2013, Defendants filed a motion to dismiss all claims in Plaintiffs' Amended Complaint with prejudice, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). On August 21, 2014, the Magistrate Judge issued a Report and Recommendation on this motion. The Magistrate Judge recommended that Defendant's Motion to Dismiss be granted as to Plaintiff's claims under the common law warranty of habitability, intentional misrepresentation (except Plaintiff Guevara's claim,) and the Tennessee Consumer Protection Act (except Plaintiff Guevara's claim).

### *STANDARD OF REVIEW*

Pursuant to federal statute,

3

> [a] judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b) (2006); accord Fed. R. Civ. P. 72(b)(3). The portions of the Report and Recommendation to which no objections were timely filed are reviewed for clear error. See Fed. R. Civ. P. 72(b) advisory committee notes (1983 Addition), Subdivision (b).

Defendants argue that Plaintiffs failed to state a claim upon which relief can be granted. Federal Rule of Procedure 12(b)(6) requires that a plaintiff provide enough facts to state a claim for relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A complaint must "contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." Indiana State Dist. Council of Laborers & HOD Carriers Pension & Welfare Fund v. Omnicare, Inc., 719 F.3d 498, 502 (6th Cir. 2013), cert. granted, 134 S. Ct. 1490, 188 L. Ed. 2d 374 (U.S. 2014) (quoting Mezibov v. Allen, 411 F.3d 712, 716 (6th Cir. 2005)). "While plausibility requires relief to be more than speculative, it need not be probable; rather, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely.'" Montesi v. Nationwide Mut. Ins. Co., 2013 WL 4522905, *2 (W.D. Tenn. 2013) (quoting Erie County, Ohio v. Morton Salt, Inc., 702 F.3d 860, 867 (6th Cir. 2012)). While this is a liberal standard, a plaintiff must still state factual matter that, if true, would plausibly state a claim; mere conclusory allegations will not suffice and the Court need not accept as true legal conclusions or unwarranted factual inferences. Twombly, 550 U.S. 544 at 557; Gregory v. Shelby Cnty., 220 F.3d 433, 446 (6th Cir. 2000). In any complaint averring fraud or mistake, "the circumstances constituting fraud or mistake shall

4

be stated with particularity." Fed. R. Civ. P. 9(b). "The Plaintiffs must plead more than a generalized grievance against a collective group of Defendants in order to meet the requirements of FRCP 9(b)." Masterson v. Meade Cnty. Fiscal Court, 489 F. Supp. 2d 740, 749 (W.D. Ky. 2007).

*ANALYSIS*

A.      **FHA & THRA Claims**

Plaintiffs allege that Defendants specifically targeted them for exploitative and discriminatory housing practices because of their national origin in violation of the Fair Housing Act (specifically 42 U.S.C. § 3604(b) and § 3604(c)) and the Tennessee Human Rights Act (specifically Tenn. Code Ann. § 4-21-601(2) and § 4-21-601(5)). Tennessee courts have held that the legislature intended the Tennessee Human Rights Act to be coextensive with federal civil rights laws, and the Tennessee Supreme Court looks to federal interpretation for guidance in interpreting the THRA. See Parker v. Warren Cnty. Util. Dist., 2 S.W.3d 170, 172 (Tenn. 1999). Thus, the analysis is identical for housing discrimination claims under both the FHA and the THRA.

1.      **§ 3604(b) and §4-21-601(2)**

The Fair Housing Act and Tennessee Human Rights Act both prohibit discrimination in the terms, conditions, and privileges of housing or in the provision or services in connection therewith on the basis of race, color, religion, sex, familial status, or national origin. 42 U.S.C. § 6404(b); Tenn. Code Ann. § 4-21-601(2). A plaintiff is only required to provide a short and plain statement of the claim that gives the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests in order to withstand a motion to dismiss a § 3604(b) claim and is not required to allege every element of a *prima facie* case. Dickinson v. Zanesville

5

Metro. Hous. Auth., 975 F. Supp. 2d 863, 870-72 (S.D. Ohio 2013). Under this standard, a plaintiff need allege only the statutory basis for their claims, and the factual predicate of those claims, such that the defendants are apprised of the claims and the grounds upon which they rest. Id.

The Magistrate Judge held that Plaintiffs set forth the statutory bases for their claims and outlined the factual details supporting the allegations of Defendant's misconduct in the following ways:

1. Failing to register mobile homes in the names of buyers in spite of the fact that they were charged fees for titling, leaving them with no badge of ownership but all the responsibilities attendant thereto (Am. Compl. ¶¶ 338-55);
2. Improperly requiring residents to pay all of the property taxes associated with lots (even taxes that accrued prior to their residency), rather than only the increased taxes for affixing "their" mobile home to the land (Am. Compl. ¶¶ 129-34; 157-61);
3. Shifting all the burden for maintaining and insuring the mobile homes to the resident, even though their "ownership" rights were very tenuous in many instances because they had no formal badge of ownership of the mobile homes (Am. Compl. ¶¶ 266, 316, 405);
4. Frequently and arbitrarily raising the rent on the pads on which the mobile homes sat (Am. Compl. ¶¶ 204-06, 230);
5. Creating "ridiculous contrivances" to prevent Guevara from moving his mobile home (Am. Compl. ¶¶ 154-69);
6. Cursing Guevara in front of his family (Am. Compl. ¶¶ 171-72);
7. Calling police on Martinez and other Hispanic residents when they went peacefully to the mobile home park office after the flood and threatening to call immigration authorities (Am. Compl. ¶ 211);
8. Threatening Nava with criminal prosecution and deportation, and calling the police on him in retaliation for his attempts to move his mobile home (Am. Compl. ¶¶ 251-52);
9. Threatening unwarranted criminal action against Nevarez (Am. Compl. ¶ 300); and,
10. Cursing Angeles in front of his wife and children and threatening criminal action and deportation against him (Am. Compl. ¶¶ 362-63).

(ECF No. 95 at 8-9).

Defendants do not dispute that Plaintiffs have stated a claim under § 3604(b), but argue that some of these claims should be dismissed because the alleged mistreatment occurred after Plaintiffs had obtained housing. There is disagreement amongst the Circuit Courts of Appeal as to whether post-access activity is actionable under § 3604(b) and the Sixth Circuit has not addressed this issue.[2] Compare Cox v. City of Dallas, Tex., 430 F.3d 734 (5th Cir. 2005) (finding that FHA prohibited discrimination relating to the initial sale or rental of a dwelling), with Comm. Concerning Cmty. Improvement v. City of Modesto, 583 F.3d 690 (9th Cir. 2009) (finding that FHA reaches post-acquisition discrimination). Magistrate Judge Pham concluded that it was not necessary to resolve this circuit split because at least some of the alleged mistreatment of Plaintiffs occurred prior to the Plaintiffs obtaining housing. (ECF No. 95 at 10.) The Court disagrees. The time to dispose of allegations that fail to state a claim is during a 12(b)(6) motion, therefore it must be determined which of Plaintiffs' FHA claims are cognizable in order to properly rule on the instant Motion.

The proper starting point to determine the intended scope of the FHA is the language of the statute. See Cmty. for Creative Non-Violence v. Reid, 490 U.S. 730, 739 (1989) ("The starting point for [the] interpretation of a statute is always its language."); see also Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992) (noting that "courts must presume that a legislature says in a statute what it means and means in a statute what it says there"). Defendant argues that § 3604(b) only applies to claims related to access to housing. Section 3604(b) makes it unlawful to discriminate against any person

---

[2] The Sixth Circuit has, however, held that § 3617 of the FHA (prohibiting intimidation and harassment of those who exercise their rights under the FHA) *does* apply to post-access conduct. See Hidden Village, LLC v. City of Lakewood, Ohio, 734 F.3d 519, 528-30 (6th Cir. 2013).

7

"in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith . . ." on the basis of a protected characteristic.

The phrase "in connection therewith" is arguably ambiguous; the statute could be read broadly to protect against discrimination in the provision of services or facilities in connection with the dwelling (which would encompass post-access conduct), or narrowly to protect against discrimination in the provision of services or facilities in connection with the sale or rental (which would not encompass post-access conduct). The most natural reading is the former. Courts are "obliged to give effect, if possible, to every word Congress used." Reiter v. Sonotone Corp., 442 U.S. 330, 339, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979). "Services" are frequently provided both in connection with a sale or rental (*e.g.*, appraisal services or background checks,) and with the dwelling itself (*e.g.*, maintenance and security services). On the other hand, it is a strain to imagine "facilities" provided in association with a real estate transaction (whether sale or rental) but easy to imagine "facilities" provided in association with continuing use of a dwelling.

This broad interpretation is reinforced by comparing § 3604(b) to § 3604(a). Section 3604(a) explicitly addresses issues regarding access to housing, stating that it is unlawful to "refuse to sell or rent … or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.") Since § 3604(a) explicitly limits itself to access to housing issues and § 3604(b) does not even mention access, it is fair to infer that Congress intended § 3604(b) to reach conduct broader than mere access to housing, which was already addressed in § 3604(a).

This is also the interpretation that best achieves the broad remedial goals of the Fair Housing Act. The policy of the Fair Housing Act is to provide, "within constitutional limits, for fair housing throughout the United States." 42 U.S.C. § 3601. Denying relief to plaintiffs who have been discriminated against after they were granted access to housing falls short of this mandate. It is not "fair housing" to charge the same price for access to everyone on the front end, but to later deny equal access to services and facilities based on a protected characteristic. A landlord cannot deny access to a community gym or swimming pool based on a tenant's race without violating the Fair Housing Act. A home owner's association cannot selectively enforce restrictive covenants based solely on a resident's religion. And, in this case, a mobile home court operator cannot impose harsher rental terms or conditions based on a tenant's national origin. Because § 3604(b) applies to post-access conduct, and there is no dispute that the alleged conduct, if found to be true, constitutes discriminatory treatment, Defendant's Motion to Dismiss is DENIED as to Plaintiffs' § 3604(b) claim.

### 2. § 3604(c) and §4-21-601(5)

Section 3604(c) of the Fair Housing Act provides that "it shall be unlawful . . . to make, print, or publish . . . any notice, statement, or advertisement, with respect to the . . . rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin . . . ." 42 U.S.C. § 3604(c). Section 4-21-601(5) of the Tennessee Human Rights Act has identical language. Plaintiffs allege that Defendants violated this statute by depriving them of the benefits of a racially and culturally diverse environment by the discriminatory exclusion of African-Americans from the MMC mobile home park. A plaintiff must meet three elements to state a claim under § 3604(c): "(1)

defendant made a statement; (2) the statement was made with respect to the sale or rental of a dwelling; and (3) the statement indicated a preference, or limitation or discrimination on the basis of a protected class." Miami Valley Fair Hous. Ctr., Inc. v. Connor Grp., 805 F. Supp. 2d 396, 407 (S.D. Ohio 2011) (citing White v. U.S. Dep't of Hous. & Urban Dev., 475 F.3d 898, 904 (7th Cir. 2007)).

The Magistrate Judge concluded that the following sections of Plaintiffs' Complaint were sufficient to make out a claim under § 3604(c):

> [T]hat the Defendants advertised extensively in Spanish-language print and radio media in an effort to target Hispanics for exploitative treatment in terms and conditions of housing at MMC (Am. Compl. ¶¶ 34-36); that as a result of the purposeful targeting, virtually all of the residents of MMC were Hispanic (Am. Compl. ¶¶ 34-36); that Defendants actively discouraged African-Americans from applying for residence at MMC (Am. Compl. ¶ 39); and that the majority of residents of Shelby County are African-American, yet there are virtually no African-American residents at MMC and that "it is highly unlikely, if not impossible, that this situation could exist without discriminatory manipulation of the resident selection process" (Am. Compl. ¶¶ 37-39).

(ECF No. 95 at 12-13.)

The Magistrate Judge correctly concluded that Plaintiffs stated a plausible claim under § 3604(c). Defendant objects to this conclusion, arguing that Plaintiffs do not offer any facts to support their claim that Defendant discouraged people of African descent from applying for residence. It is true that the claim regarding discouragement of African-Americans is a conclusory allegation, however, Plaintiffs' § 3604(c) claims are not dependent on this particular allegation. The Department of Housing and Urban Development's regulations interpreting § 3604(c) state that "[s]electing media or locations for advertising the sale or rental of dwellings which deny particular segments of the housing market information about housing opportunities because of race, color, religion, sex, handicap, familial status, or national origin" is

discriminatory advertising. 24 C.F.R. § 100.75. Plaintiffs' allegation that Defendant only advertised in Spanish language media outlets is sufficient to state a claim because it meets the Department of Housing and Urban Development's definition of discriminatory advertisement in that it denies non-Spanish speaking segments of the housing market, who are overwhelmingly non-Hispanic, information about housing opportunities. Therefore, Defendants' Motion to Dismiss is DENIED as to Plaintiffs' claims under § 3604(c). Thus, both Counts I and II survive Defendants' Motion to Dismiss.

    **B.    TCPA Claims**

Plaintiffs claim that Defendants violated the TCPA in the following ways:

1. Failing to inform applicants for residency that the MMC mobile home park was subject to flooding;
2. Failing to inform applicants for housing that execution of a RISC or Assumption would lock the applicant into a long-term lease for the duration of the financing and that they would not be able to move their mobile homes away from flooding;
3. Executing assumption documents and failing to transfer title to a mobile home to the purchaser;
4. Creating contrivances to prevent residents from moving mobile homes when they were legally entitled to do so;
5. Requiring new purchasers to pay property taxes that had accrued prior to their arrival;
6. Trying to collect rental payments when the property was uninhabitable; and
7. Falsely representing that measures would be taken to remedy flooding.

(ECF No. 72, ¶ 490.)

"In order to recover under the TCPA, the plaintiff must prove '(1) that the defendant engaged in an unfair or deceptive act or practice declared unlawful by the TCPA and (2) that the defendant's conduct caused an 'ascertainable loss of money or property, real, personal, or mixed, or any other article or commodity, or thing of value wherever situated . . . .'" Roopchan v. ADT Sec. Sys., Inc., 781 F. Supp. 2d 636, 656 (E.D. Tenn. 2011) (quoting Tucker v. Sierra Builders, 180 S.W.3d 109, 115 (Tenn. 2005)). An act is "deceptive" if it involves a "material

11

representation, practice or omission likely to mislead a reasonable consumer." Davis v. McGuigan, 325 S.W.3d 149, 162 (Tenn. 2010) (quoting Ganzevoort v. Russell, 949 S.W.2d 293, 299 (Tenn. 1997)). An act is "unfair" if it "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition." Davis, 325 S.W.3d at 162 (quoting Tucker, 180 S.W.3d at 116–17).

The Magistrate Judge held that Plaintiffs adequately alleged a claim under the TCPA by specifically stating these alleged acts with particularity, and rejected Defendants' arguments that some of the claims were time barred, concluding that the time when Plaintiffs had actual or constructive knowledge as to the injuries was a question of fact that the Court could not determine without further factual development. Defendants do not contest the Magistrate Judge's finding regarding the sufficiency of the claims, but argue that the Magistrate Judge should have found some of the claims barred by the statute of limitations.

A plaintiff must bring a TCPA claim within one year of a person's discovery of the unlawful act or practice. Tenn. Code Ann. § 47-18-110. The statute of limitations for TCPA claims begins to run when a plaintiff discovers the injury or when, in the exercise of reasonable care and diligence, a plaintiff should have discovered it. Power & Telephone Co. v. SunTrust Bank, 447 F.3d 923, 930 (6th Cir. 2006). Plaintiffs filed the original complaint one year after the flood, on May 2, 2011. Defendants argue that since some of these events occurred prior to the flood, Plaintiffs should have discovered the injuries more than one year prior to when they filed this suit. While it is true that some of these incidents did occur prior to the flood, the Magistrate Judge correctly held that the issue of constructive knowledge cannot be determined at this point.

12

A plaintiff has constructive knowledge of an injury under the TCPA when they are aware of facts sufficient to put a reasonable person on notice that he has suffered an injury as a result of wrongful conduct, and the plaintiff knows the identity of the person who engaged in the conduct. McIntosh v. Blanton, 164 S.W.3d 584, 586 (Tenn. Ct. App. 2004) (quoting Roe v. Jefferson, 875 S.W.2d 653, 656-57 (Tenn. 1994)). Whether a plaintiff exercised reasonable care and diligence in discovering an injury or wrong is usually a question of fact. Wyatt v. A-Best Co.,910 S.W.2d 851, 854 (Tenn. 1995). That general rule applies in this case as well. It is true that the conduct on which several of these claims are based occurred prior to the flood (and thus more than one year before this suit was filed), but there are not sufficient facts in the record to decide as a matter of law that the plaintiffs not only knew of the conduct, but knew that the conduct injured them and that the conduct was wrongful. Therefore, the Court adopts the Magistrate Judge's recommendations and Defendants' Motion to Dismiss is DENIED as to the TCPA claims (Count III).

      **C.**      **Breach of the Common Law Duty to Disclose Latent Defects Claim**

Sellers of real property have a duty to disclose to buyers any material facts that impact the property's value and that are not known or reasonably discoverable by a purchaser exercising ordinary diligence. Fayne v. Vincent, 301 S.W.3d 162, 177 (Tenn. 2009) (citing Simmons v. Evans, 185 Tenn. 282, 285–86, 206 S.W.2d 295, 296 (Tenn. 1947) and Patel v. Bayliff, 121 S.W.3d 347, 352–53 (Tenn. Ct. App. 2003)). A landlord also has a duty to disclose a "dangerous condition" (which is functionally the same as a latent defect) if: 1) the condition existed at the time a tenant executed a lease, 2) the landlord knew or should have known of the condition; and 3) the tenant did not know of the condition and could not have discovered the latent defect through the exercise of reasonable care. Lethcoe v. Holden, 31 S.W.3d 254, 256 (Tenn. Ct. App.

13

2000). Plaintiffs allege that Defendants breached these duties by failing to disclose that the mobile home park was in a flood zone and had a tendency to flood. The Magistrate Judge held that whether the propensity for flooding was reasonably discoverable by Plaintiffs cannot be determined at this time without further factual development, therefore Defendants' Motion to Dismiss should be denied as to this claim.

Defendants object to this finding, arguing that, because the property's location in a flood plain was publicly available in FEMA flood maps, Plaintiffs had constructive knowledge of the hazardous condition. The Court disagrees. Whether there was constructive notice of a latent defect is generally a question of fact. See McCormick v. Warren Cnty. Bd. of Educ., No. M2011-02261-COA-R3-CV, 2013 WL 167764, at *7 (Tenn. Ct. App. Jan. 15, 2013). It is plausible that a jury could find that a reasonable buyer should have checked FEMA records before purchasing a property, but this finding cannot be said to be a foregone conclusion as a matter of law. Furthermore, knowing that a property is in a flood plain and knowing that a property has endured several major floods in the recent past are distinctly different things. See, e.g., Campbell v. Huddleston, E2011-00174-COA-R3CV, 2011 WL 6884233 (Tenn. Ct. App. Dec. 27, 2011) (holding that buyers could bring a misrepresentation claim when the seller told them there had been some flooding, but did not disclose the full magnitude of past flooding). Unlike the buyers in Huddleston, Plaintiffs were not given any notice by Defendants of the history of flooding, even though Defendants knew the property had endured major floods in the recent past.[3] These are sufficient facts to make out a claim for failure to disclose a latent defect

---

[3] Defendants also argue that they notified residents of past flooding in 2009. However, not all Plaintiffs lived in the mobile home park in 2009, and, even if they did, it is unclear from the record if Defendants explained the extent of past flooding in this 2009 notice.

and therefore the Court adopts the Magistrate Judge's recommendation and Defendant's Motion to Dismiss is DENIED as to the failure to disclose a latent defect claim (Count IV).

### D. Breach of the Common Law Warranty of Habitability Claims

The Magistrate Judge recommended dismissing Plaintiffs' common law warranty of habitability claims because such claims only apply to the sale of new property and no Plaintiff alleged that they purchased new property from Defendants. No party objects to these recommendations. On clear error review, the Court takes no issue with this analysis. Therefore, the Court adopts the Magistrate Judge's recommendation as to this claim and Defendants' Motion to Dismiss is GRANTED as to Plaintiffs' breach of the common law warranty of habitability claim (Count V).

### E. Tennessee Uniform Residential Landlord Tenant Act Claims

The Tennessee Uniform Residential Landlord Tenant Act ("TURLTA") requires that a landlord keep premises in a fit and habitable condition and maintain all common areas in a clean and safe condition. Tenn. Code Ann. § 66-28-304(a)(2); Tenn. Code Ann. § 66-28-304(a)(3). Plaintiffs allege that Defendants breached warranties of habitability under TURLTA by failing to keep the common areas in a safe and habitable condition during the flood. Defendants' initial argument in their Motion to Dismiss was that the TURLTA did not apply to them because they did not qualify as "landlords" since they only leased pads upon which mobile homes sat. Magistrate Judge Pham recommended that Defendants' Motion to Dismiss be denied as to this claim because Defendants explicitly identified themselves as landlords in some documents and because at least one Tennessee court has applied TURLTA to the lease of a lot in a mobile home park. See R&E Props. v. Jones, No. 03A01-9804-CV-00133, 1999 WL 38282 (Tenn. Ct. App. Jan. 13, 1999).

15

Defendants do not object to this finding, however, they argue instead that they were not required to maintain common areas in the event of a natural disaster, pursuant to Tenn. Code Ann. § 66-28-503. The Court agrees. Sections of a statute should be construed together so they can be applied in harmony and for the specific purposes stated therein. It is a "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." Davis v. Michigan Dept. of Treasury, 489 U.S. 803, 809, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989). If there is an apparent conflict between two sections of a statute, the more specific provision takes precedence over a general one. United States v. Kumar, 750 F.3d 563, 568-69 (6th Cir. 2014), cert. denied, ___ U.S. ____, 2014 WL 4647137 (U.S. Oct. 20, 2014) (No. 14-314), (quoting United States v. Perry, 360 F.3d 519, 535 (6th Cir. 2004)). Here, the general statutory requirement to keep premises in a clean, safe, and habitable condition are preempted by the specific statutory section dealing with the responsibilities of landlords and plaintiffs when premises are damaged or destroyed by fire or casualty. See Tenn. Code Ann. § 66-28-503. Since Defendant was not obligated to maintain the common areas when they were uninhabitable due to casualty, the Motion to Dismiss is GRANTED as to Plaintiff's TURLTA claims (Count VI).

### F. Breach of Contract Claims

Plaintiffs allege that Defendants breached contracts by "failing to furnish a lot that is safe and free from frequent flooding; by raising lot rents within lease periods; by collecting property taxes that are not owed by residents; and by illegally interfering with resident trailer owners who attempt to move them; and by entering mobile homes without permission or justification…" (ECF No. 72, ¶ 498.)

16

To establish a claim for breach of contract, a plaintiff must show: (1) the existence of an enforceable contract; (2) non-performance amounting to a breach of that contract; and (3) damages caused by the breach. C&W Asset Acquisition, LLC v. Oggs, 230 S.W.3d 671, 676–77 (Tenn. Ct. App. 2007) (citing ARC LifeMed, Inc. v. AMC—Tenn., Inc., 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005)); Thompson v. Am. Gen. Life & Accident Ins. Co., 404 F. Supp. 2d 1023, 1028 (M.D. Tenn. 2005).

Magistrate Judge Pham held that Plaintiffs had met every element for a breach of contract claim because Plaintiffs allegedly had leases to rent their pads in the mobile home court, and Defendants allegedly breached those leases by arbitrarily raising rent and forcing at least one Plaintiff to pay rent when the property was uninhabitable without a set off or abatement. (See ECF No. 71 ¶¶ 150-51, 206, 230, 264, 313, 373, 403, 429, 455). Defendants object to this conclusion, arguing that Plaintiffs failed to meet the second element of the test because they did not identify a specific contractual provision that was breached. See Gant v. Suncom Wireless, M2002-02574-COA-R3CV, 2003 WL 21170488 (Tenn. Ct. App. May 20, 2003) (dismissing breach of contract claim when Plaintiff failed to identify a contractual obligation that was breached). The Court agrees. Plaintiffs allege that Defendants treated them poorly by arbitrarily raising rent and charging rent when the property was uninhabitable, and claim these actions constitute a breach of contract, however, Plaintiffs have not alleged that Defendants agreed in the leases not to do this. This conduct can serve as the basis for other causes of action, but it cannot establish a claim for breach of contract without identifying a contractual obligation that the Defendants breached. Therefore, Defendant's Motion to Dismiss is GRANTED as to the breach of contract claims (Count VII).

### G.   Conversion

Plaintiffs allege that Defendants committed the tort of conversion by collecting payments for taxes not owed by Plaintiffs and by entering Plaintiff Guevara's trailer and removing his personal property. The Magistrate Judge recommended denying Defendant's Motion to Dismiss as to the conversion claim. Neither party objects to this recommendation. On clear error review, the Magistrate Judge's recommendation is adopted, and Defendants' Motion to Dismiss is DENIED as to Plaintiffs' conversion claim (Count VIII).

### H. Intentional Misrepresentation

Plaintiffs allege that Defendant Whitten falsely stated to Plaintiffs that there had been no flooding problems at the mobile home court, and that Plaintiffs purchased mobile homes and suffered damages based on this information. The Magistrate Judge held that only Plaintiff Guevara pleaded an intentional misrepresentation claim with sufficient particularity, that there was a question of fact to be decided as to whether Plaintiff Guevara's claim was barred by the statute of limitations, and that therefore Defendant's Motion to Dismiss the intentional misrepresentation claims should be denied as to Plaintiff Guevara and granted as to all other plaintiffs. Neither party objects to these recommendations. On clear error review, the Court finds no issue with the Magistrate Judge's analysis and therefore adopts the Magistrate Judge's recommendations. Defendants' Motion to Dismiss is DENIED as to Plaintiff Guevara's intentional misrepresentation claim and GRANTED as to all other Plaintiffs' intentional misrepresentation claims. (Count IX).

*CONCLUSION*

For the reasons stated above, Defendants' Motion to Dismiss is hereby GRANTED as to the breach of warranty of habitability claims (Count V), the Tennessee Uniform Residential

Landlord Tenant Act Claims (Count VI), the breach of contract claims (Count VII), and the intentional misrepresentation claims as to all Plaintiff's <u>except</u> Guevara (Count IX).

The Defendants' Motion to Dismiss is hereby DENIED as to the Fair Housing Act and Tennessee Human Rights Act claims (Counts I and II), the Tennessee Consumer Protection Act claims (Count III), the breach of the duty to disclose latent defects claims (Count IV), the conversion claims (Count VIII), and Plaintiff Guevara's intentional misrepresentation claim (Count IX).

**IT IS SO ORDERED,** this 29th day of October, 2014.

/s/ Sheryl H. Lipman
SHERYL H. LIPMAN
UNITED STATES DISTRICT JUDGE